IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,<br>    Plaintiff,<br><br>v.<br><br>AGCO CORPORATION d/b/a GSI GROUP, LLC et al,<br>    Defendant. | Case No. 1:22-cv-01047-JEH-RLH |

**Order**

Now before the Court is Defendant Koehl Enterprise's Motion for Summary Judgment (D. 95), Third-Party Defendant Lowecon LLC's Motion for Summary Judgment (D. 98), and Defendant AGCO Corporation d/b/a GSI Group LLC's Motion for Summary Judgment (D. 99).[1] For the reasons stated, *infra*, Koehl Enterprise's Motion for Summary Judgment (D. 95) is GRANTED and DENIED in part, Lowecon LLC's Third-Party Motion for Summary Judgment (D. 98) is DENIED, and AGCO Corporation d/b/a GSI Group LLC's Motion for Summary Judgment (D. 99) is GRANTED.

I

Plaintiff, Nationwide Agribusiness Insurance Company ("Nationwide"), commenced this cause of action on February 17, 2022. (D. 1). On February 8, 2024, Nationwide filed the operative Third Amended Complaint. (D. 54). The Third Amended Complaint named as the Defendants AGCO Corporation d/b/a GSI Group LLC ("GSI"), Clear Creek & Associates, Inc. ("Clear Creek"), and Koehl

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

Enterprises LLC ("Koehl"). *Id.* On February 22, 2024, Koehl and GSI filed their Answers, Affirmative Defenses, and Counterclaims against Nationwide. (D. 57 & 58). Nationwide subsequently filed its Answers to Koehl and GSI's Counterclaims on March 13, 2024. (D. 60 & 61). On March 22, 2024, Koehl sought leave to file a Third-Party Complaint (D. 62) that was later filed with the Court on April 10, 2024. (D. 66). The Third-Party Complaint named Lowecon LLC ("Lowecon") as a Third-Party Defendant. (D. 66). On May 31, 2024, Lowecon filed its Answer to the Third-Party Complaint. (D. 72). On March 28, 2025, Koehl filed a Motion for Summary Judgment (D. 95). On March 31, 2025, Third-Party Defendant Lowecon filed a Third-Party Motion for Summary Judgment. (D. 98). On April 1, 2025, GSI filed a Corrected Motion for Summary Judgment. (D. 99).[2] On April 18, 2025, Third-Party Plaintiff, Koehl, filed its Memorandum in Opposition (D. 101) to Lowecon's Third-Party Motion for Summary Judgment (D. 98) to which Lowecon filed its Reply on May 7, 2025. (D. 104). The Plaintiff, Nationwide, filed an initial and partial Memorandum in Opposition to all the Motions for Summary Judgment on April 18, 2025, which was further supplemented on May 19, 2025. (D. 102 & 105). On May 30, 2025, GSI filed its Reply in support of its Motion for Summary Judgment. (D. 106). On June 9, 2025, Koehl filed its Reply in support of its Motion for Summary Judgment. (D. 109). The matter is now fully briefed.[3]

---

[2] On April 10, 2025, the Plaintiff sought an extension to file its Response and Reply which the Court subsequently granted. (D. 100); *See* 04/21/2025 Text Order.

[3] Plaintiff asks the Court in its opposition to the Motions for Summary Judgment (D. 105) to allow the "Plaintiff to supplement this briefing with testimony from the Defendant's expert" and to "withhold any decision until all discovery is complete." (D. 105 at ECF p. 17). However, the parties originally agreed on a dispositive motion deadline of April 15, 2024 (D. 84) and the Plaintiff has already received an extension of time to respond to the Motions for Summary Judgment. *See* 04/21/2025 Text Order. Plaintiff has not filed an appropriate Motion for an extension of time; as such, the request is denied. *See* Civil L.R. 6.1; 7.1(D); *see also Miller v. Chi. Transit Auth.*, 20 F.4th 1148, 1153 (7th Cir. 2021).

II

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrate that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993). "The parties must support their assertions that a fact cannot be or is genuinely disputed by citing to 'particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . ..'" *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . [I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* at 248. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Anderson*, 477

U.S. at 255 (1986). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to successfully oppose a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 250.

### A

Plaintiff is an insurance company that was responsible for providing coverage to a grain bin owned by Prairie Central Cooperative ("PCC") in Chenoa, Illinois. (D. 54 at ECF p. 4). Plaintiff, therefore, is subrogated to the right, remedies, and causes of action that accrued to its insured against the Defendants. *Id.* In March of 2020, PCC contacted Koehl to discuss erecting a new grain bin. *Id.* at ECF p. 3. On or about March 9, 2020, GSI, a grain bin manufacturer, prepared a drawing for a grain bin to be erected at PCC in Chenoa, Illinois. *Id.* That drawing was stamped by the President of Clear Creek, Joshua Munson, and stated "WIND LOAD BASED ON WIND VELOCITY OF 105 MILES PER HOUR WITH WIND PRESSURE APPLIED TO VERTICAL PROJECTED AREA." *Id.* On March 20, 2020, Koehl and PCC entered into a contract "for the work to be done to install" the grain bin in Chenoa, Illinois. (D. 105 at ECF p. 3). In May of 2020, Koehl executed a contract with Lowecon to construct and install the grain bin. (D. 95 at ECF p. 4). On or about July 11, 2020, a storm passed through the area producing strong winds that caused damage to the grain bin. *Id.* "After a full investigation and pursuant to the contract of insurance, Nationwide determined it was reasonable and necessary to pay on behalf of its insured the sum of $2,494,756.01 to cover property damage" caused by an allegedly defective grain bin "that did not meet the standards in the drawings." (D. 54 at ECF p. 4). The Plaintiff alleges that the wind gusts did not exceed 100 mph, but still caused substantial damage to the grain bin, contrary to the wind load listed in the drawing stating it could withstand winds of up to 105 mph. *Id.* at ECF p. 3. Moreover, Plaintiff alleges that their investigation revealed

4

an "anchor bolt washer on the base stiffener assembly was not installed" and that Koehl was responsible for that portion of the assembly. *Id.* at ECF p. 3-4. In response, Plaintiff filed this suit alleging three causes of action. In Count One, the Plaintiff alleges negligent misrepresentation against Clear Creek. *Id.* at ECF p. 4-5. In Count Two, the Plaintiff alleges breach of contract against GSI. *Id.* at ECF p. 5. In Count Three, the Plaintiff alleges breach of warranty against Koehl. *Id.* at ECF p. 5-6. Subsequently, Koehl, as the Third-Party Plaintiff, alleged two causes of action against Lowecon (D. 66), first for breach of contract, and second for breach of warranty. *Id.*

### 1

In Count One, the Plaintiff alleges negligent misrepresentation against the Defendant Clear Creek. (D. 56 at ECF p. 3). However, in Plaintiff's May 19, 2025 Memorandum in Opposition to the Defendants' Motions for Summary Judgment, the Plaintiff explains in a footnote that "Plaintiff has reached a settlement agreement with Defendant Clear Creek & Associates, Inc. and anticipates filing documents reflecting that settlement shortly." (D. 105 at ECF p. 2 fn. 1). To date, the Court has not received such a filing and Clear Creek did not file a dispositive motion with the Court moving for summary judgment as to Count One. Indeed, other than the Certificate of Service filed on February 28, 2025 (D. 93), the last responsive filing from Clear Creek is its Answer from February 19, 2024. (D. 56). Accordingly, given that neither the Plaintiff nor Clear Creek has moved for summary judgment as to Count One of the Complaint, it may proceed.

### 2

In Count Two, the Plaintiff alleges breach of contract against GSI. (D. 54 at ECF p. 5). In support, the Plaintiff contends, "[w]hen Prairie Central Cooperative agreed to purchase a Grain Bin from GSI, included in the contract for sale was a promise the Grain Bin would withstand wind gusts up to 105 miles per hour and

that the work performed by GSI in constructing the Grain Bin would be performed in a workmanlike manner in accordance with industry standards."[4] *Id.* Further, the Plaintiff claims the contract "was breached when GSI failed to construct the Grain Bin in a workmanlike manner in accordance with industry standards and constructed a Grain Bin that did not withstand wind gusts less than 100 miles per hour", ultimately causing damage to PCC's grain bin and the Plaintiff pursuant to the insurance policy. *Id.* GSI has moved for summary judgment as to Count Two because "GSI did not enter any contract with PCC to support privity" and GSI did not construct or erect the grain bin. (D. 99 at ECF p. 2). For the reasons that follow, the Court agrees with the Defendant GSI.

"To state a claim for breach of contract in Illinois, a plaintiff must plead: '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages.'" *Hernadez v. Ill. Inst. of Tech.*, 63 F.4th 661, 667 (7th Cir. 2023) (citing *Babbitt Muns., Inc. v. Health Care Serv. Corp.*, 64 N.E.3d 1178, 1186 (Ill. App. Ct. 2016)). In Plaintiff's Opposition to GSI's Motion for Summary Judgment, the "Plaintiff acknowledges it is not in direct privity of contract with GSI (i.e. [sic][,] Prairie Central has no written contract with GSI and Nationwide stands in Prairie Central's shoes)." (D. 105 at ECF p. 15). Plaintiff's claim therefore fails because there is no valid and enforceable contract between Plaintiff and GSI. *See Hernandez*, 63 F.4th at 667.

Alternatively, in Response to the Motion for Summary Judgment, the Plaintiff pleads a new theory that asserts it is a third-party beneficiary of the

---

[4] The Plaintiff subsequently lists in its undisputed facts that "PCC purchased two Grain Bins from *Koehl*", that "[t]here was *no contract* between PCC and GSI related to the Grain Bins", and that "Koehl purchased a standard Grain Bin package for the Grain Bins from GSI, *the manufacturer*." (D. 105 at ECF p. 5) (emphasis added). The Court reminds the Plaintiff of its obligations under Rule 11(b).

contract between GSI and Koehl.[5] (D. 105 at ECF p. 15). However, in Illinois, a cause of action brought by a third-party beneficiary is a distinct breach of contract claim. *See e.g.*, *Bayer HealthCare LLC v. Aeropres Corp.*, 727 F. Supp. 3d 738, 751 (N.D. Ill. 2024) (discussing breach of contract actions brought by third-party beneficiaries and citing to related cases treating them as distinct causes of action). And while a "district court retains discretion to treat new claims presented for the first time in briefing as a constructive motion to amend. It will rarely be appropriate to do so." *Schmees*, 77 F.4th at 490. Such is the case here. As GSI points out, this case has been pending since 2022, and the Plaintiff is now attempting to shoehorn an unbriefed and new legal theory into its opposition to GSI's Motion for Summary Judgment. (D. 106 at ECF p. 13). The instant circumstances do not permit it. Plaintiff is operating under the Third Amended Complaint and has had ample opportunity to pursue its claims and develop facts. The Court is reminded of the Seventh Circuit's admonition that "[t]here must be a point at which a plaintiff makes a commitment to the theory of its case." *J.P. Morgan Chase Bank, N.A. v. Drywall Serv. & Supply Co., Inc.*, 265 F.R.D. 341, 347 (7th Cir. 2010) (citing *Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1304 (7th Cir. 1993)). Accordingly, Defendant GSI's Motion for Summary Judgment is granted as two Count Two of the Complaint. *See Celotex Corp.*, 477 U.S. at 323-327.

### 3

In Count Three, the Plaintiff alleges a breach of warranty claim against Koehl. (D. 54 at ECF p. 5-6). Plaintiff states that Koehl "expressly or impliedly warranted fitness and installation" of the grain bin and that Koehl breached those

---

[5] Further, in a footnote, the Plaintiff states, "To the extent the Court does not accept Plaintiff's argument that it is a third-party beneficiary to the contract, Plaintiff requests leave to amend its Complaint to conform to the evidence that has come forward more recently in this case." (D. 105 at ECF p. 16 fn. 2). However, the Court denies the Plaintiff's perfunctory request to amend its Complaint for a fourth time. *See Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 489-90 (7th Cir. 2023) (labeling the practice of amending by brief as wholeheartedly inappropriate).

warranties because the grain bin was "neither fit for its purpose nor properly installed" when the grain bin was "damaged due to winds under 100 miles per hour." *Id.* The Defendant Koehl has moved for summary judgment on the basis that there was neither an express nor implied warranty. For the reasons that follow, the Court agrees that there is no express warranty, but determines there remains a genuine issue of material fact as to whether Koehl breached an implied warranty.

"Pursuant to Illinois statute, 'any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.'" *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020) (quoting 810 ILL. COMP. STAT. § 5/2-313(1)(a)). "To state a claim for breach of express warranty in Illinois, plaintiffs must allege that the seller: (1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *Id.* (quoting *Aquino v. C.R. Bard, Inc.*, 413 F. Supp. 3d 770, 787 (N.D. Ill. 2019)). Koehl contends that "Plaintiff does not point to or reference any express warranty in its Complaint." (D. 95 at ECF p. 6). Further, Koehl argues, Plaintiff does not allege facts "giving rise to an express warranty" and states that the five-page contract between PCC and Koehl "does not contain any warranties whatsoever, let alone one for specific wind speeds." *Id.* at ECF p. 7.

With respect to whether there was any express warranty, the Court agrees the facts alleged do not lend themselves to support such a finding, *see* (D. 95-3 at ECF p. 1-5), and the Plaintiff does not appear to dispute that conclusion given that its opposition to Koehl's Motion for Summary Judgment does not discuss the express warranty claim at all, instead focusing entirely on whether an implied warranty exists. (D. 105 at ECF p. 12-14). Plaintiff's failure to respond to Koehl's

8

arguments against the existence of an express warranty results in waiver. *LeSEA Inc. v. LeSEA Broad. Co.*, 379 F. Supp. 3d 732, 739 (N.D. Ind. 2019) (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)). Accordingly, the Court grants Koehl's Motion for Summary Judgment as to the existence of an express warranty and moves to consider whether the remaining implied warranty claim survives summary judgment.

To "prove a breach of implied warranty of fitness for a particular purpose, a plaintiff must show (1) a sale of goods, (2) that the seller had reason to know of any particular purpose for which the goods are required, (3) that plaintiff, as buyer of the goods, was relying upon seller's skills or judgment to select suitable goods, and (4) that the goods were not fit for the particular purpose for which they were used." *Maldonado v. Creative Woodworking Concepts, Inc.*, 797 N.E.2d 662, 666 (Ill. App. Ct. 2003) (citing *Crest Container Corp. v. R.H. Bishop Co.*, 445 N.E.2d 19 (Ill. App. Ct. 1982)).[6] The Defendant Koehl primarily challenges elements two and four, claiming it "had no reason to know of the particular purpose (sustaining certain wind speeds) for which the goods were required" and that the Plaintiff cannot prove the goods were not fit for the particular purpose, that is, the wind stayed below 105 mph. (D. 95 at ECF p. 8). For the reasons that follow, the Court finds there remains a genuine dispute of material fact as to whether Koehl breached an implied warranty of fitness for a particular purpose.

In support of its contention, Koehl first states PCC "never expressed they needed the grain bins to withstand a certain wind speed or communicated the wind speed to Koehl prior to the execution of the contract." *Id.* And it is undisputed that Mr. Hinshaw, who executed the contract on behalf of PCC with Koehl, "never discussed or requested that the bins be capable of withstanding any

---

[6] The parties agree on this standard. (D. 95 at ECF p. 7 & D. 105 at ECF p. 12).

wind velocity or speed." (D. 105 at ECF p. 3). Thus, there is no genuine dispute as to whether there was any verbal representation made to Koehl, the seller, giving it reason to know the grain bin would need to be fit for a particular purpose—withstanding certain windspeeds. That leaves the Court with the drawing from GSI and whether Koehl had any other reason to know of the wind-speed requirement. As to this point, Koehl states that "Matt Hinshaw, who executed the contract on behalf of [PCC], testified that he did not see the GSI drawings of the grain bin—which included the 105 mph wind speed requirement—before entering the contract" and Mr. Charles, who executed the contract on behalf of Koehl, did not review the GSI drawing prior to entering the contract. (D. 95 at ECF p. 8). In other words, Koehl argues that neither itself as the seller, nor PCC as the buyer, had any awareness of a particular wind-speed purpose at the time the contract was executed, and the Plaintiff does not dispute those facts. (D. 105 at ECF p. 3-4). In response, the Plaintiff contends that it can still prove its claim without Koehl knowing about the wind-speed requirement by relying on Mr. Hinshaw's testimony that, "when a contractor erects a grain bin, it is 'kind of expected that they won't fall down.'" (D. 105 at ECF p. 12-13). That may be true, but a comment like that holds more weight in the context of *res ipsa loquitur* than it does in supporting a claim for breach of implied warranty of fitness for a particular purpose. Indeed, the Court cannot discern what particular purpose the Plaintiff supposes the seller should have been aware of if not the wind-speed requirement. If, as Plaintiff suggests, the particular purpose of the grain bin is to not "fall down", then no implied warranty of fitness for a particular purpose can exist because "[n]o warranty for a particular purpose is created if the intended use is no different from the ordinary use of the product." *Ali v. Volkswagen Grp. Of Am., Inc.*, 559 F. Supp. 3d 723, 735 (N.D. Ill. 2021) (quoting *CHS Acquisition Corp. v. Watson Coatings, Inc.*, 2018 WL 3970137, at *6 (N.D. Ill. 2018)); *see also Albrosco Ltd. v. Prince Agric. Prods.*,

*Inc.*, 545 F. Supp. 3d 656, 662 (C.D. Ill. 2021) ("Plaintiff does not allege any facts supporting the assertion that animal feed that provides the sole source of Vitamins A and E for a swine herd is a 'particular purpose' different from the products' ordinary purpose."). Similarly, the Plaintiff states that "Koehl breached its implied warranty by not ensuring the correct parts were accounted for and assembled or by otherwise not erecting a grain bin free of defects that would cause it to fall down."[7] *Id.* But erecting a "grain bin free of defects" is not a particular purpose different from a grain bin's ordinary use. *Ali*, 559 F. Supp. 2d at 735; *see also* 810 ILL. COMP. STAT § 5/2-315, cmt. 2 ("A 'particular purpose differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business . . . For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.").

That leaves the Plaintiff with its remaining allegation that Koehl still may have had a reason to know "of the 105-mph requirement for grain bins in the area" because it "could have" reviewed GSI's drawing before entering the contract with PCC. (D. 105 at ECF p. 13-14). As to the drawing, there is no dispute that it existed at the time of the contract. (D. 105 at ECF p. 13). Therefore, Koehl's assertion that Mr. Charles did not review and does not typically review these kinds of drawings is not determinative of whether Koehl may have had reason to know of such a requirement. (D. 109 at ECF p. 14). Moreover, Plaintiff alleges Koehl also had reason to know by virtue of the "International Building Code" which Plaintiff alleges contains such a "region-specific" wind-speed requirement. (D. 105 at ECF p. 13-14). As to this point, Koehl does not dispute that the requirement exists, but

---

[7] The Plaintiff's Complaint states only that "Koehl Bros breached the above-referenced warranties because the Grain Bin at issue were neither fit for its purpose nor properly installed when the Grain Bin was damaged due to winds under 100 miles per hour." (D. 54 at ECF p. 6).

11

instead argues that it "specifically says it only applies to designers" and that "Koehl did not design the bin[,] and there has been no allegation or evidence that it did." (D. 109 at ECF p. 14). Koehl argues this kind of speculation about what "could have" been known is inappropriate, and that "liability [instead] hinges on [the] *objective foreseeability*" of the particular purpose. (D. 109 at ECF p. 14) (emphasis in original). True, objective foreseeability may play a role in determining whether Koehl had reason to know of the wind-speed requirement given that both Plaintiff and Koehl were seemingly unaware of the drawing and the International Building Code's requirements at the time the contract was executed. *Id.* But those are disputes of material facts regarding whether Koehl had a reason to know of the particular purpose, and that may be determinative of the outcome of this case.

Lastly, Koehl argues that Plaintiff's entire claim "is based on it proving that the bins were not fit for the particular purpose for which they were used, i.e., to withstand wind speeds up to 105 mph" and that "Plaintiff cannot prove that the wind speeds did not exceed" 105 mph at the "loss site." (D. 95 at ECF p. 9 & 109 at ECF p. 17). But the Plaintiff also disputes this point by relying on its expert, Dr. Branscome, who testified that "it was unlikely winds exceeded 90 mph because he would have expected to see more damage if they had" and that "the only structures that experienced any damage at the time of this wind storm [sic] were the two grain bins purchased from Koehl." (D. 105 at ECF p. 14). This dispute is also a question for the jury as there remains an unresolved issue as to whether the grain bin was actually fit to withstand the particular purpose of 105 mph windspeeds. Accordingly, Count Three may proceed as to the Plaintiff's claim of a breach of implied warranty for a particular purpose.

**4**

Defendants Koehl and GSI assert negligence as counterclaims against the Plaintiff.[8] (D. 57 at ECF p. 9 & D. 58 at ECF p. 5-6). Both assert that Nationwide owed a duty to preserve relevant evidence related to the investigation of the damage to the grain bin and that Nationwide knew or should have known that civil litigation was foreseeable, but nonetheless failed to preserve relevant evidence that both Koehl and GSI allege injured them as counterclaimants because it has impaired their ability to defend themselves in this action and to bring claims against other potentially responsible third parties. *Id.* However, neither Koehl (D. 95 at ECF p. 2), nor GSI (D. 99 at ECF p. 1), nor the Plaintiff (D. 105 at ECF p. 11-17), have moved for summary judgment as to these outstanding counterclaims. Accordingly, these claims may proceed.

**B**

**1**

In Count One of Koehl's Third-Party Complaint, Koehl alleges breach of contract against Lowecon regarding its installation, construction, and erection of the grain bin at issue in this suit. (D. 66 at ECF p. 3). Koehl states that it executed a contract in May of 2020 with Lowecon for the "construction, installation, and erection of the grain bin" and that "Lowecon was responsible for and performed"

---

[8] Koehl asserts "negligent spoliation of evidence" as a counterclaim (D. 57 at ECF p. 9); however, "Illinois does not recognize an independent tort for spoliation of evidence." *Bosch v. NorthShore Univ. Health Sys.*, 155 N.E.3d 486, 508 (Ill. App. Ct. 2019) (citing *Dardeen v. Kuehling*, 821 N.E.2d 227, 231 (Ill. 2004)). "Instead, an action for negligent spoliation must be brought under the traditional elements of negligence —duty, breach, and damages proximately caused by the breach." *Id.* (citing *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 270 (Ill. 1995)). "Generally, 'there is no duty to preserve evidence; however, a duty to preserve evidence may arise through an agreement, a contract, a statute . . . or another special circumstance.'" *Id.* However, "[i]n any of the foregoing instances, a defendant owes a duty of due care to preserve evidence if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action." *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 271 (Ill. 1995). Therefore, the Court construes the claim as a negligence action. The Court construes the same with respect to GSI's counterclaim as it does not identify by name the cause of action (D. 58 at ECF p. 5-6), though it asserts the traditionally associated elements. *Id.*

as much. *Id.* Koehl alleges that, per the terms of its contract with Lowecon, it "was required to perform all work according to standard industry practices" and "properly secure the grain bin to the concrete foundation and properly install the base stiffener assembly with all required parts, pieces, and components." *Id.* at ECF p. 4. Further, Koehl alleges the contract required Lowecon "to install the grain bin in compliance with all applicable drawings, manuals, requirements, standards, and standard industry practices." *Id.* Koehl claims Lowecon breached its duties under the contract by 1) failing to perform all work according to standard industry practices; 2) failing to properly construct, install, and erect the grain bin; 3) failing to properly secure the grain bin and properly install the base stiffener assembly with all required parts and pieces; and 4) failing to install the grain bin in compliance with all applicable drawings, manuals, requirements, and standard industry practices. *Id.* at ECF p. 4-5. As a result, Koehl alleges Lowecon caused Plaintiff "to sustain the damages for which Plaintiff seeks recovery in its Third Amended Complaint and for which Koehl has been named as a Defendant . . .." *Id.*

"To state a claim for breach of contract in Illinois, a plaintiff must plead: '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages.'" *Hernadez v. Ill. Inst. of Tech.*, 63 F.4th 661, 667 (7th Cir. 2023) (citing *Babbitt Muns., Inc. v. Health Care Serv. Corp.*, 64 N.E.3d 1178, 1186 (Ill. App. Ct. 2016)). In this case, Lowecon contends that it performed all of its obligations under the contract and, therefore, there can be no breach. For the reasons that follow, the Court finds there remains a genuine factual dispute as to whether the contract was breached.

The parties agree to the following facts. Koehl is in the business of selling, designing, and constructing grain elevators, grain systems, and grain agricultural structures. (D. 101 at ECF p. 2). Lowecon "is in the business of constructing grain

14

bins." *Id.* After Koehl engaged PCC who agreed to purchase two grain bins from Koehl, it submitted "purchase orders to GSI for the grain bins packages that [PCC] wanted to have constructed in Chenoa" and "Koehl obtained information regarding what materials to purchase from GSI using an online portal on GSI's website." *Id.* at ECF p. 3. That website "uses a software program that automatically generates a materials list for the component parts that make up the grain bin package when a customer uses the program to select a grain bin of a certain size." *Id.* "Once Koehl submitted the purchase orders . . . GSI prepared the bin package and shipped it directly to the construction site in Chenoa." *Id.* Koehl subsequently executed a written contract with Lowecon in May of 2020 that defined the scope of the work that Lowecon was obligated to perform which included construction of the grain bins. *Id.* Under the contract, Lowecon was not responsible for "unloading and inventorying the bin package that GSI prepared and shipped to the construction site". *Id.* at ECF p. 4. The bin package included a "Packing List" that "itemized all required materials and components" that "made up the bin package as determined by GSI." *Id.* The parties do not dispute that Lowecon was not responsible for reviewing the Packing List to determine it was complete; however, the contract provided that "all work [was] to be done according to standard industry practices." (D. 104 at ECF p. 3). In "[t]he Packing List that GSI provided for each grin bin[,] [it] included a line item for a quantity of 105 'SQ. BASE PLATE WASHER FOR 1' B." (D. 101 at ECF p. 5). That list did not include any reference to any other base plate washers and Lowecon was not responsible for designing or purchasing or approving the materials or components incorporated into the construction. *Id.* at ECF p. 5. The parties also agree that Lowecon received a copy of the GSI instruction manual. (D. 104 at ECF p. 4).

However, the parties dispute what the manual called for with respect to installation and its applicability to the grain bin's construction. Specifically,

15

Lowecon argues that the manual provides instructions on constructing a 105′ diameter bin with ¾″ inch anchor bolts, but the bins at issue in this case were designed with 1″ anchor bolts and the "manual does not include instructions or a diagram of the anchor plate assembly for a 1″ anchor bolt design." (D. 104 at ECF p. 4). Koehl argues that the manual called for installation of a "round washer over the pre-installed bolt and secured with a nut" (D. 101 at ECF p. 8) and Lowecon does not dispute that it did not install round washers. (D. 104 at ECF p. 5). Further, Lowecon does not dispute that the manual requires a round washer "for a ¾″ anchor bolt design", but contends that that portion of the manual is inapplicable to the design at issue because it is a 1″ anchor bolt design. *Id.* at ECF p. 4. In other words, there is a dispute over what the manual called for with respect to assembling the bin and whether it was applicable to the instant design.

As to the ultimate construction, neither party disputes that "Lowecon did not communicate to Koehl that parts were missing or that any parts were the wrong size." *Id.* Koehl alleges that "Lowecon went ahead [and] constructed the bins without it, inconsistent with the instructions in the manual" while Lowecon argues the portion of the manual Koehl relies upon is inapplicable to the bin design in this case. (D. 101 at ECF p. 11 & D. 104 at ECF p. 4). Koehl further argues that "[f]ollowing the instruction manual would undoubtedly be standard industry practice" and that Lowecon "breached its duty under the contract by failing to follow the instruction for assembling the grain bin." *Id.* at ECF p. 12. In response, Lowecon argues that expert testimony "is necessary to establish both a professional's standard of care, and the professional's deviation from the standard of care" (D. 104 at ECF p. 6) (citing *Thompson v. Gordon*, 948 N.E.2d 39, 49 (Ill. 2011)), and that there is "no such evidence of record before this Court." *Id.* However, *Thompson* discusses the burden on the plaintiff to prove the standard of care through expert testimony in professional negligence cases. 948 N.E.2d at 49.

Koehl's claim is a breach of contract action, and, as the Court found in *Thompson*, "the degree of skill and care required of the civil engineer depended on his contractual obligation, and the scope of that duty was defined by the contract." *Id.* at 51. The same is true here. And it may also be true, as Lowecon contends, that it was not the party responsible for designing the bin or inventorying and reviewing the Packing List to assure all the parts were there, including the round washers. However, there remains a genuine dispute as to whether Lowecon's failure to notify of an absent part pursuant to the manual it was provided before moving forward with its assembly of the grain bin constituted a breach of Lowecon's duty under the contract that "[a]ll work is to be done according to standard industry practices." (D. 104 at ECF p. 3). For those reasons, the Court denies Lowecon's Motion for Summary Judgment as to Count One of the Third-Party Complaint.

**2**

In Count Two of the Third-party Complaint, Koehl alleges breach of warranty against Lowecon. (D. 66 at ECF p. 5-6). Koehl alleges "Lowecon expressly warranted its workmanship for the grain bin for a period of one year" and "impliedly warranted the fitness of the grain bin it erected." *Id.* Koehl further claims that Lowecon breached the warranties mentioned by failing to "construct, install, or erect the grain bin with workmanship that complied with applicable drawings, manuals, requirements, standards, and standard industry practices and the resulting product was not fit for the particular purpose for which it was built" and by "fail[ing] to properly secure the grain bin to the concrete foundation and properly install the base stiffener assembly with all required parts, pieces, and components." *Id.* Koehl alleges Lowecon's breach of its warranties "caused the grain bin to be damaged as alleged in Plaintiff's Third Amended Complaint" and "for which Plaintiff seeks recovery and for which Koehl has been named as a

Defendant". *Id.* Consequently, Koehl claims Lowecon is liable for the damages alleged by Plaintiff and liable to Koehl for Plaintiff's claim against it. *Id.*

Koehl makes similar arguments in support of its claim that Lowecon breached its duty of workmanship in that Koehl alleges Lowecon "erected the grain bins but did not follow the instructions in the manual and left out a key component—the round washers." (D. 101 at ECF p. 13). "By not following the GSI manual instructions and erecting the bin without a key component," Lowecon "breached the warranty of workmanship." *Id.* Indeed, pursuant to the contract, "Lowecon will warrantee workmanship for a period of (1) year unless otherwise agreed upon." (D. 98 at ECF p. 13). "Under Illinois law, when one contracts to perform construction work, he impliedly warrants that he will do the work in a reasonably workmanlike manner." *StarNet Ins. Co. v. Ruprecht*, 3 F.4th 342, 347 (7th Cir. 2021). "'Workmanlike means 'worthy of a good workman,' 'well performed or skillful.'" *Id.* (quoting *Riverfront Lofts Condo. Owners Ass'n v. Milwaukee/Riverfront Props. Ltd. P'ship*, 256 F. Supp. 2d 918, 930 (E.D. Wisc. 2002)). It "signifies 'a proper, safe, and non-negligent way of doing something. It describes an ordinary standard of care, the breach of which standard is equivalent to negligence." *Id.* (quoting *Sheldon Livestock Co. v. Western Engine Co.*, 301 N.E.2d 485, 488 (1973)). Lowecon contends the "warranty is strictly limited to the scope of the work contracted for" and that its work "was limited to the erection of the bins utilizing the component parts provided to it as part of 'the package' by others." (D. 98 at ECF p. 13). Because Lowecon contends the relevant component part—the round washers—were not on site or its responsibility, Lowecon believes it was under no contractual obligation to install them and no warranty could extend to an extra-contractual task. *Id.* However, there remains a genuine dispute as to the GSI manual's applicability to the grain bin's construction, what it called for with respect to installation of the round washers, and whether Lowecon acted in a

18

workmanlike manner by failing to inquire as to the round washer's propriety before moving forward with the grain bin's assembly. As Koehl points out, "[o]ne would not assemble a dresser from IKEA if some of the parts were missing—they would reach out to IKEA for the missing part before assembly." (D. 101 at ECF p. 12). As such, viewing these facts in the light most favorable to the non-movant, and drawing all justifiable inferences therein, the Court cannot say as a matter of law that Lowecon did not breach its warrantee of workmanship pursuant to the contract. Therefore, the Court denies summary judgment as to Count Two of the Third-Party Complaint.

## III

For the reasons stated, *supra*, Koehl's Motion for Summary Judgment (D. 95) is GRANTED and DENIED in part, Lowecon's Third-Party Motion for Summary Judgment (D. 98) is DENIED, and GSI's Motion for Summary Judgment (D. 99) is GRANTED. The Court determines that there remain triable issues of fact as to the following:

1. Whether Clear Creek is liable for negligent misrepresentation;
2. Whether Koehl breached an implied warranty of fitness for the particular purpose of constructing a grain bin that could withstand 105 mph windspeeds;
3. Whether Nationwide is liable to either Koehl or GSI for negligent spoilation of evidence;
4. Whether Lowecon breached a duty under the contract with Koehl to perform work according to standard industry practices;
5. Whether Lowecon breached its warranty of workmanship.

If the parties believe settlement negotiations might be fruitful, they are to inform

19

the Court within 14 days and the matter will be referred to the Magistrate Judge for a settlement conference.

*It is so ordered.*

Entered on June 24, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE